PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-2255

JEFFREY PEARSON,

        Plaintiff - Appellant,

    v.

CAROLYN W. COLVIN, Acting Commissioner of the Social
Security Administration,

        Defendant - Appellee.

Appeal from the United States District Court for the Eastern
District of Virginia, at Norfolk.  Henry Coke Morgan, Jr.,
Senior District Judge.  (2:14-cv-00088-HCM-DEM)

Argued: October 27, 2015          Decided: December 17, 2015

Before MOTZ, GREGORY, and HARRIS, Circuit Judges.

Reversed and remanded by published opinion.  Judge Motz wrote
the opinion, in which Judge Gregory and Judge Harris joined.

**ARGUED**: E. Gregory Wallace, CAMPBELL UNIVERSITY SCHOOL OF LAW,
Raleigh, North Carolina, for Appellant.  Mark Anthony Exley,
OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for
Appellee.  **ON BRIEF**: Anthony W. Bartels, BARTELS LAW FIRM,
Jonesboro, Arkansas, for Appellant.  Dana J. Boente, United
States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,
Alexandria, Virginia; Nora Koch, Acting Regional Chief Counsel,
Taryn Jasner, Supervisory Attorney, Naomi Mendelsohn, Assistant
Regional Counsel, SOCIAL SECURITY ADMINISTRATION, Philadelphia,
Pennsylvania, for Appellee.

DIANA GRIBBON MOTZ, Circuit Judge:

Jeffrey Pearson appeals the denial of his application for Social Security disability benefits. He contends that substantial evidence does not support the determination of the administrative law judge denying those benefits because the judge failed to resolve a conflict between the vocational expert's testimony and the Dictionary of Occupational Titles. We reverse and remand for further proceedings.

I.

In the past, Pearson has worked in a number of fields, including as a groundskeeper and a press operator in a plastics factory. On February 5, 2009, Pearson was laid off from his most recent job. Six weeks later, he applied for Social Security disability benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381, 1382c(a)(3) (2012). Pearson alleged disability due to arthritis of the spine, degenerative joint disease and a torn rotator cuff in his right shoulder, shin splints, degenerative artery disease in his feet, a hiatal hernia, irritable bowel syndrome, post-traumatic stress disorder, depression, and anxiety.

Pearson's application for benefits was denied initially and upon rehearing. An administrative law judge (ALJ) then affirmed the denial. The Social Security Appeals Council (Appeals

2

Council), however, granted Pearson's request for review and remanded the case for further consideration, including testimony from a vocational expert.

During the second ALJ hearing, at the beginning of the vocational expert's testimony, the ALJ asked the expert:  "[i]f your testimony here today differs [from] what is contained within the Dictionary of Occupational Titles, will you please so advise both [Pearson's counsel] and myself?"[1]  The expert agreed to do so.

The ALJ presented the vocational expert with a series of hypotheticals.  The ALJ first posed the following scenario to the expert:

> [A]ssume a hypothetical individual the same age, education and work experience which our claimant possesses.  Further assume that this hypothetical individual can lift and carry up to 20 pounds occasionally and ten pounds frequently; sit six hours in an eight hour day and stand and walk a total of six hours in an eight hour day.  Further assume that this hypothetical individual would be limited to occasionally overhead lifting and reaching using the upper nondominant extremity.  Likewise, this hypothetical individual could perform occasional

---

[1] The Dictionary of Occupational Titles, and its companion, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (hereinafter, "Dictionary" refers to both documents), are Social Security Administration resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations.  U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. 1991); U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (1993).

> bending, stooping, crouching, kneeling and crawling. . . . The hypothetical individual, I would restrict to ambulating on level surfaces. Likewise, this hypothetical individual could perform no more than frequent fingering and handling using the upper extremities. . . . None exertionally. I would restrict this hypothetical individual to performing simple, routine tasks, with supervision which is simple, direct and concrete.

The ALJ then asked the vocational expert whether this hypothetical person could perform any of Pearson's past jobs. The expert said he could not.

The ALJ next asked the vocational expert whether this hypothetical person could perform any other jobs in the national economy. The expert testified that the hypothetical individual could perform unskilled and light work, including jobs as a motel cleaner (Dictionary 323.687-014), cashier II (Dictionary 211.462-010), and bench press operator (Dictionary 690.685-014). Pearson's counsel asked the expert no questions. At no time did the vocational expert mention any conflicts between his testimony and the Dictionary.

The ALJ again affirmed the denial of benefits. He found that Pearson has the following severe impairments: "right shoulder tendonitis and synovial lesion, left ear disorder (status-post left tympanoplasty), diffuse joint pain due to arthritis, back pain, carpal tunnel syndrome of the right wrist, anxiety, and depression." However, the ALJ found that, with

4

those impairments, Pearson retains the residual functional capacity

> to perform less than the full range of unskilled, light work . . . . Physically, he retains the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours in an eight-hour workday; sit for six hours in an eight-hour workday; is limited to occasional overhead lifting/reaching using the non-dominant upper extremity; can do no more than frequent fingering and handling; can occasionally bend, stoop, crouch and crawl; is limited to ambulating on level surfaces; and is limited to face-to-face communication due to alleged hearing loss in one ear. Mentally, the claimant is limited to simple, routine tasks with supervision that is simple, direct, and concrete.

This residual functional capacity mirrors that of the individual in the first hypothetical that the ALJ posed to the vocational expert. The ALJ concluded that although Pearson could not perform any relevant past work, he could perform jobs that exist in significant numbers in the national economy, including work as a motel cleaner, cashier II, and machine tender/bench press operator; these are the same jobs the vocational expert mentioned. The ALJ thus found Pearson not disabled and not entitled to benefits.

Pearson requested an Appeals Council review of this decision, which the Council denied. Pearson then filed this action in federal court. Upon consideration of the parties' cross-motions for summary judgment, a magistrate judge issued a report recommending grant of summary judgment to the Acting

Commissioner of the Social Security Administration (Commissioner). Pearson filed objections, arguing that the magistrate judge erred in recommending affirmance of the ALJ's finding that he was not disabled or eligible to receive benefits. This was assertedly so because the ALJ did not resolve a conflict between the vocational expert's testimony and the Dictionary as to whether the jobs identified by the expert required an ability Pearson did not have -- to frequently reach overhead with both arms. The district court overruled the objection, adopted the magistrate judge's recommendation, and granted the Commissioner summary judgment. This timely appeal followed.

                                II.

When reviewing a Social Security disability determination, a reviewing court must "uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation marks omitted). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v.

6

<u>Astrue</u>, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

In considering an application for disability benefits, an ALJ uses a five-step sequential process to evaluate the disability claim.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2015).  The ALJ determines whether a claimant:  first, is currently gainfully employed; second, has a severe impairment; and third, has an impairment that meets or equals the requirements of a listed impairment.  <u>Id.</u> § 404.1520(a)(4)(i), (ii), (iii).  Fourth, the ALJ considers the claimant's residual functional capacity to determine whether he can perform the functions of his past relevant work.  <u>Id.</u> § 404.1520(a)(4)(iv). Fifth, the ALJ considers the claimant's age, education, work experience, and residual functional capacity to decide whether he can perform alternative work that exists in significant numbers in the national economy.  <u>Id.</u> §§ 404.1520(a)(4)(v), 404.1560(c).  The claimant has the burden of proof for the first four steps, but at the final, fifth step the Commissioner bears the burden to prove that the claimant is able to perform alternative work.  <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987).

To answer this final question -- whether sufficient other work exists for the claimant in the national economy -- the ALJ "rel[ies] primarily" on the <u>Dictionary</u>.  Soc. Sec. Admin.,

7

<u>Policy Interpretation Ruling: Titles II & XVI: Use of Vocational</u> <u>Expert & Vocational Specialist Evidence, & Other Reliable</u> <u>Occupational Info. in Disability Decisions</u>, Social Security Ruling (SSR) 00-4p, 2000 WL 1898704 (Dec. 4, 2000), at *2 (the Ruling). The ALJ "may also use" a vocational expert to address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of given positions in the national economy. <u>Id.</u>

Because the expert's testimony can sometimes conflict with the <u>Dictionary</u>, the Social Security Administration has promulgated a multi-page, formal ruling to "clarif[y the] standards for the use of vocational experts" at ALJ hearings. <u>Id.</u> at *1. The Ruling requires that the ALJ "inquire, on the record, . . . whether" the vocational expert's testimony "conflict[s]" with the <u>Dictionary</u>, and also requires that the ALJ "elicit a reasonable explanation for" and "resolve" conflicts between the expert's testimony and the <u>Dictionary</u>. <u>Id.</u> at *2. The ALJ must, by determining if the vocational expert's explanation is "reasonable," resolve conflicts "before relying on the [vocational expert's] evidence to support a determination or decision about whether the claimant is disabled." <u>Id.</u>

8

III.

The parties dispute two aspects of the Ruling: (1), whether SSR 00-4p requires the ALJ only to ask the vocational expert whether his testimony conflicts with the Dictionary or also requires the ALJ to identify conflicts independently from the vocational expert; and (2), if the ALJ must independently identify conflicts, which conflicts the Ruling requires an ALJ to identify. Pearson maintains that SSR 00-4p requires the ALJ to do more than just ask the vocational expert if his testimony conflicts with the Dictionary. He contends that even if a vocational expert fails to identify a conflict in response to that question, the Ruling requires the ALJ to independently identify all "possible" conflicts between the expert's testimony and the Dictionary. SSR 00-4p, at *4. The Commissioner argues that SSR 00-4p imposes on the ALJ only the single "affirmative responsibility" -- to ask the vocational expert whether his testimony conflicts with the Dictionary. Id. At most, the Commissioner contends, if the ALJ must do more, he need only identify "obvious" conflicts.[2]

---

[2] The Commissioner does not argue that we must defer to her interpretation of SSR 00-4p. Although we of course defer to the Commissioner's interpretation of the statute as manifested in the Ruling itself, Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995), because the Commissioner's proposed interpretation of the Ruling conflicts with the plain language of the Ruling, we need not and do not defer to her interpretation.

9

As to whether the ALJ must do more than ask the vocational expert whether his testimony conflicts with the Dictionary, the Commissioner's "affirmative responsibility" argument ignores other language in SSR 00-4p. From its outset, the Ruling sets forth multiple responsibilities and places all of them on the ALJ. Id. at *1. The Ruling explains that its "purpose" is to require the ALJ (not the vocational expert) to "[i]dentify and obtain a reasonable explanation" for conflicts between the vocational expert's testimony and the Dictionary, and to "[e]xplain in the determination or decision how any conflict that has been identified was resolved." Id. (emphasis added).

The Ruling then proceeds to require that the ALJ undertake exactly these responsibilities. First, the ALJ must "[a]sk the [vocational expert] . . . if the evidence he or she has provided conflicts with information provided in the [Dictionary]"; and second, "[i]f the [vocational expert]'s . . . evidence appears to conflict with the [Dictionary]," the ALJ must "obtain a reasonable explanation for the apparent conflict." Id. at *4. Notably, this second requirement is so independent of the first that it does not rest on the vocational expert's identification of a conflict. Rather, SSR 00-4p directs the ALJ to "resolve the conflict by determining if the explanation given by the [expert] is reasonable," id. at *2, and to "explain the

10

resolution of the conflict <u>irrespective of how the conflict was identified</u>," <u>id.</u> at *4 (emphasis added).

We thus agree with Pearson and the courts that have held that an ALJ has not fulfilled his affirmative duty "merely because the [vocational expert] responds 'yes' when asked if her testimony is consistent with the [Dictionary]." <u>Moore v. Colvin</u>, 769 F.3d 987, 990 (8th Cir. 2014); <u>see</u> <u>Overman v. Astrue</u>, 546 F.3d 456, 463 (7th Cir. 2008) (explaining that "the ALJ's affirmative duty extends beyond merely asking the [vocational expert] whether his testimony is consistent with the [Dictionary]"); <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1087 (10th Cir. 1999) (deciding, in a case predating SSR 00-4p, that "the ALJ must ask the expert how his or her testimony . . . corresponds with the [Dictionary], and elicit a reasonable explanation for any discrepancy"). <u>But see</u> <u>Lindsley v. Comm'r of Soc. Sec.</u>, 560 F.3d 601, 606 (6th Cir. 2009) ("Nothing in [SSR] 00-4p places an affirmative duty on the ALJ to conduct an independent investigation . . . .") (internal quotation marks omitted).[3] The

---

[3] Even the Ruling's structure and section titles demonstrate that SSR 00-4p requires far more than that the ALJ ask the vocational expert a single question. The titles address "Resolving Conflicts in Occupational Information," "Reasonable Explanations for Conflicts (or Apparent Conflicts) in Occupational Information," "Evidence That Conflicts with SSA Policy," and then "The Responsibility To Ask About Conflicts," followed by "Explaining the Resolution." SSR 00-4p, at *2-*4.

11

ALJ independently must identify conflicts between the expert's testimony and the Dictionary.

As to the second issue, the language of the Ruling also explains which conflicts the ALJ must identify and resolve before relying on the vocational expert's testimony. Though SSR 00-4p uses several adjectives to describe the relevant conflict, the most common and, we believe, the most compelling is "apparent." See SSR 00-4p, at *2, *4 (requiring that the ALJ "elicit a reasonable explanation" for "an apparent unresolved conflict" and "obtain a reasonable explanation for the apparent conflict"). "Apparent," of course, has two definitions: "obvious," and "seeming real or true, but not necessarily so." Apparent, Oxford Dictionary, http://www.oxforddictionaries.com/definition/apparent (last visited Dec. 1, 2015). But the context of the word "apparent" in SSR 00-4p makes plain that the Ruling intends the latter meaning -- that the ALJ must identify where the expert's testimony seems to, but does not necessarily, conflict with the Dictionary. For the Ruling explains that "[i]f the [vocational expert]'s . . . evidence appears to conflict with the [Dictionary], the adjudicator will obtain a reasonable explanation for the apparent conflict." SSR 00-4p, at *4 (emphasis added). And the title of one of the Ruling's sections

12

addresses "Conflicts (or Apparent Conflicts)," id. at *2; that title would be redundant if "apparent" meant "obvious."

We recognize that this conclusion rejects both the Commissioner's claim that, if any conflict needs to be identified and resolved, it is only obvious conflicts, and Pearson's contention that all possible conflicts must be identified and resolved. The Commissioner's contention ignores the directive in SSR 00-4p that the ALJ address "apparent conflicts." Pearson's view would require the ALJ to do more than simply compare the express language of the Dictionary and the vocational expert's testimony, and would allow the claimant to nitpick an ALJ's or expert's word choice on appeal.

The "apparent" conflict standard falls between the parties' proposals. It embraces the reality that, in many cases, testimony may only appear to conflict with the Dictionary, and the vocational expert may be able to explain that, in fact, no conflict exists. However, if the ALJ does not elicit this explanation, then the expert's testimony cannot provide substantial evidence to support the ALJ's decision. An expert's testimony that apparently conflicts with the Dictionary can only provide substantial evidence if the ALJ has received this explanation from the expert and determined that the explanation

13

is reasonable and provides a basis for relying on the testimony rather than the Dictionary. See id. at *2.[4]

The policies animating the disability benefits adjudication process also support requiring the ALJ to make an independent identification of conflicts, and to do so for apparent conflicts. The Social Security Act is remedial in nature and "unusually protective" of claimants. See Bowen v. City of New York, 476 U.S. 467, 480, 486 n.14 (1986). Adopting the Commissioner's approach could result in a benefit denial based on a vocational expert's testimony that a claimant could fulfill occupational requirements when, in fact, he could not fulfill those requirements. We have long recognized that the administrative hearing process is not an adversarial one, and an ALJ has a duty to investigate the facts and develop the record independent of the claimant or his counsel. See Cook v. Heckler, 783 F.2d 1168, 1173-74 (4th Cir. 1986). An ALJ has not fully developed the record if it contains an unresolved conflict between the expert's testimony and the Dictionary. Nor has the

---

[4] Requiring an ALJ independently to identify apparent conflicts does not require a further hearing. When an ALJ identifies an apparent conflict that was not raised during a hearing, he can request an explanation of the conflict by submitting interrogatories to the vocational expert. Social Security Administration, Hearings, Appeals, and Litigation Law Manual, ch. I-2-5 § 30(C) (2015). If the expert provides a sufficient explanation, the ALJ can resolve the apparent conflict on the basis of the answer to the interrogatories.

14

ALJ fulfilled this duty if he ignores an apparent conflict because the expert testified that no conflict existed.

Moreover, if SSR 00-4p did not require the ALJ to make an independent identification of conflicts, or only required the ALJ to identify and resolve obvious conflicts, the duty to identify conflicts between the vocational expert testimony and the Dictionary would fall to the claimant. SSR 00-4p, however, requires nothing of the claimant. See Prochaska v. Barnhart, 454 F.3d 731, 735 (7th Cir. 2006) ("[The claimant] was not required to raise th[e conflict] at the hearing, because the Ruling places the burden of making the necessary inquiry on the ALJ."). Moreover, given that the Commissioner bears the burden of proof at this final step, adopting the Commissioner's view "would amount to shifting the burden" of proof "back to the claimant." Haddock, 196 F.3d at 1090. This we will not do.


IV.

Finally, we turn to whether in this case the ALJ fulfilled his duty to make an independent identification of apparent conflicts. The vocational expert testified that Pearson was not disabled because he could perform three occupations available in sufficient numbers in the national economy. For all three, the Dictionary lists frequent reaching as a requirement. Dictionary at 323.687-014, 1991 WL 672783; 211.462-010, 1991 WL 671840;

15

690.685-014, 1991 WL 678500. The Dictionary defines reaching as "[e]xtending hand(s) and arm(s) in any direction." App. C, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles C-3. The ALJ found Pearson's nondominant arm could only occasionally reach upward.

Pearson contends that "the plain meaning of 'reaching,'" as defined by the Dictionary, "encompasses overhead reaching." Appellant's Br. at 14. According to Pearson, because the Dictionary does not specify the type of reaching involved, all of the listed occupations "may require bilateral overhead reaching." Id. at 17. The Commissioner maintains that the Dictionary only requires some form of frequent reaching, not necessarily frequent bilateral overhead reaching, for these occupations. The Commissioner claims that, because Pearson can frequently reach bilaterally in every direction but overhead, and can frequently reach overhead with one arm, no conflict exists.

Although the Dictionary does not expressly state that the occupations identified by the expert require frequent bilateral overhead reaching, the Dictionary's broad definition of "reaching" means that they certainly may require such reaching. Comparing the Dictionary definition to Pearson's limitations, the vocational expert's testimony that Pearson could fulfill the requirements of these occupations apparently conflicts with the

16

Dictionary. Although we could guess what these occupations require in reality, it is the purview of the ALJ to elicit an explanation from the expert as to whether these occupations do, in fact, require frequent bilateral overhead reaching. If the explanation does not provide a reasonable basis for relying on the expert's testimony, that testimony cannot provide substantial evidence for a denial of benefits. If the expert's explanation is reasonable, the ALJ can resolve the apparent conflict with the Dictionary and rely on the expert's testimony.

Deciding that the vocational expert's testimony apparently conflicts with the Dictionary here does not mean that an ALJ must find Pearson, or any other claimant with this limitation, unable to perform these jobs. Rather, it simply means that the ALJ and the expert should address exactly what form of reaching the stated occupations require and whether the claimant can fulfill those requirements. As the Seventh Circuit put it, "this is exactly the sort of inconsistency the ALJ should have resolved with the expert's help." Prochaska, 454 F.3d at 736 (remanding the case for the ALJ to determine whether the vocational expert's testimony conflicted with the Dictionary because "the ALJ asked the expert for work that could be done by someone who could only 'occasionally reach above shoulder level' while a cashier's requirements, under the [Dictionary], include 'reaching' frequently").

17

Directly addressing this conflict is important because even if some motel cleaners, cashiers, and bench press operators need not frequently reach overhead with both arms, the number of positions in the national economy without this requirement matters. An ALJ can only find a claimant not disabled at step five of the analysis if the Commissioner proves that the claimant can perform other work that "exist[s] in significant numbers in the national economy." 20 C.F.R. § 404.1560(c). So it is not enough that some positions exist in which the worker need not frequently reach overhead with both arms. The vocational expert must testify to how many of these positions do not require frequent bilateral overhead reaching. Likely at least some have this requirement. If there are a sufficient number of these positions that do not require frequent bilateral overhead reaching, the ALJ can properly find Pearson not disabled. If too many do have this requirement, the ALJ will necessarily find that Pearson cannot do work that exists in significant numbers in the national economy.

## V.

For the foregoing reasons, we reverse the judgment of the district court and remand the case with instructions to remand

18

it to the Commissioner for further proceedings consistent with this opinion.

REVERSED AND REMANDED