**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1437**

JONATHAN EUGENE HENDERSON,

              Plaintiff - Appellant,

        v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security
Administration,

              Defendant - Appellee.

Appeal from the United States District Court for the Western
District of North Carolina, at Bryson City.  Robert J. Conrad,
Jr., District Judge.  (2:14-cv-00003-RJC)

Submitted:  December 29, 2015          Decided:  April 5, 2016

Before KING, DIAZ, and THACKER, Circuit Judges.

Affirmed in part, reversed in part, and remanded by unpublished
per curiam opinion.

Paul B. Eaglin, OLINSKY LAW GROUP, Syracuse, New York, for
Appellant.  Jill Westmoreland Rose, Acting United States
Attorney, Mary Ellen Russell, Special Assistant United States
Attorney, Paul B. Taylor, Assistant United States Attorney,
Asheville, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jonathan Eugene Henderson appeals from the district court's order granting summary judgment to the Commissioner and finding that substantial evidence supported the Administrative Law Judge's ("ALJ") determination that Henderson was not disabled under the standards set forth in 42 U.S.C. § 405(g) (2012). Upon review, we affirm in part and reverse and remand with instructions in part.

I.

"When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted). "In reviewing for substantial evidence, [the court should] not undertake to reweigh conflicting evidence, make credibility determinations,

2

or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," we defer to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2012). The claimant "bears the burden of proving that he is disabled within the meaning of the Social Security Act." English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993). A five-step sequential process is used to evaluate a disability claim. See 20 C.F.R. § 404.1520(a)(4) (2015). First, the ALJ considers whether the claimant is engaged in substantial gainful activity. If not, the ALJ determines whether the claimant has "a severe medically

3

determinable physical or mental impairment . . . or a combination of impairments that is severe." 20 C.F.R. § 404.1520(a)(4). If so, the ALJ decides whether that impairment or combination of impairments meets or equals one of the listings at appendix 1. 20 C.F.R. § 404.1520(d) (2015). If not, the ALJ assesses the claimant's residual functional capacity ("RFC") to determine whether he retains the ability to perform past relevant work. If he does not, the burden shifts at the fifth step to the Commissioner to establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work that exists in substantial numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006) (noting Commissioner bears evidentiary burden at step five).

## II.

The ALJ found that Henderson had not engaged in substantial gainful activity since his alleged onset date and that he suffered from severe impairments including degenerative disc disease and borderline intelligence. The ALJ found that Henderson did not have an impairment that met or equaled one of the listed impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1. On appeal, Henderson first contends that he meets the

4

requirements of Medical Listing 12.05(C) and that the ALJ erroneously failed to consider that listing.

Listing 12.05(C) requires a showing of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22" ("Prong One"); "[a] valid verbal, performance, or full scale IQ of 60 through 70" ("Prong Two"); and "a physical or other mental impairment imposing an additional and significant work-related limitation of function" ("Prong Three"). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. The Commissioner does not contest Henderson's ability to establish Prong Three but argues that he cannot establish either Prong One or Two.

Because we find that Henderson cannot satisfy Prong Two, we do not reach Prong One. In Prong Two, Henderson had the burden to satisfy Listing 12.05(C) by providing a valid IQ score within the required range. Hancock, 667 F.3d at 475. The only IQ score in the record is provided by Dr. Karen Marcus, Clinical Psychologist, who performed a psychological evaluation of Henderson in 2011. Dr. Marcus reported that Henderson's full scale IQ score on the Wechsler Adult Intelligence Scale-IV was 65. However, Dr. Marcus noted that Henderson's processing speed had a negative impact upon his IQ score, and she concluded that

5

Henderson had a learning disorder, but that his intelligence was in the borderline to low average range, rather than the extremely low range suggested by his IQ score.

"[T]he results of intelligence tests are only part of the overall assessment [and] the narrative report . . . should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(a). Given that the testing examiner expressed concerns with the validity of the only IQ test in the record, we conclude that the ALJ did not err in concluding that Henderson did not meet the criteria of Listing 12.05(C).* See Hancock, 667 F.3d at 474 (holding that ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only test in the record).

---

* Henderson also contends that the ALJ erred in requiring a specific diagnosis of intellectual disability. However, the ALJ did not require such a diagnosis; instead, the ALJ noted that there was no diagnosis as one of many factors in concluding that Henderson had failed to satisfy the requirements of the Listing 12.05(C). Henderson also avers that he was granted Medicaid benefits by the North Carolina Department of Health and Human Services on the basis of meeting the requirements of Listing 12.05(C). However, as the district court found, there was no evidence that the state hearing officer was an acceptable medical source.

III.

Henderson next contends that the ALJ erred in failing to conclude that he met Listing 1.04 for disorders of the spine. A claimant is entitled to a conclusive presumption that he is disabled if he can show that his disorder results in compromise of a nerve root or the spinal cord. 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04. Listing 1.04(A) further describes the criteria a claimant must meet or equal to merit a conclusive presumption of disability arising out of compromise of a nerve root or the spinal cord: evidence of nerve root compression characterized by (1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, (4) positive straight leg raising test (sitting and supine). Henderson bore the burden of demonstrating that his impairment met or equaled the listed impairment. Kellough v. Heckler, 785 F.2d 1147, 1152 (4th Cir. 1986).

We find that the ALJ properly determined that Henderson did not have the prerequisite findings of nerve root compression, including motor loss accompanied by sensory or reflex loss. Henderson avers that he produced evidence of motor loss (exhibited muscle weakness), sensory loss (decreased reflexes), and positive straight leg raising tests. However, Henderson

7

provided no evidence of atrophy, and his evidence of muscle weakness—a lone clinical finding that his leg strength was "4+/5"—fails to undercut the substantial conflicting evidence in the record that his strength was consistently "5/5," "stable," or "normal."  Accordingly, the district court properly found that the ALJ's conclusion that Henderson did not meet the Listing was supported by substantial evidence.


IV.

Finally, Henderson argues that the vocational expert's ("VE") testimony was flawed because it created a possible conflict with the Dictionary of Occupational Titles ("DOT") and that the ALJ failed to resolve the conflict.  Specifically, Henderson claims that the VE testified that Henderson could perform certain specified jobs despite an RFC that limited him to performing simple one-to-two step tasks with low stress. However, Henderson asserts that such testimony conflicted with the DOT, which states that the listed jobs carry a GED Reasoning Code 2.  Unlike GED Reasoning Code 1, which requires the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions", GED Reasoning Code 2 requires the employee to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." Dictionary of Occupational Titles, 1991 WL 688702 (2008); see

8

also Rounds v. Comm'r, 807 F.3d 996, 1003 (9th Cir. 2015) (holding that reasoning code 2 requires additional reasoning and understanding above the ability to complete one-to-two step tasks).

In considering this issue below, the district court noted that the ALJ directed the VE to identify any conflicts and the VE identified none. The court further ruled that Henderson had failed to establish that any conflict existed between the VE's testimony and the DOT.

Social Security Ruling 00-4p provides that the ALJ "has an affirmative responsibility to ask [a VE] about any possible conflict between [his] evidence and . . . the DOT." SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). Thus, the ALJ must ask the VE if his testimony conflicts with the DOT and, if the evidence appears to conflict, the ALJ must "obtain a reasonable explanation for the apparent conflict." Id. The ALJ must resolve the conflict before relying on the VE's testimony and must explain the resolution of the conflict in his decision. Id.

Contrary to the district court's ruling, Henderson maintains that the ALJ is required to do more than just ask the VE if his testimony conflicts with the DOT. In Pearson v. Colvin, 810 F.3d 204, 209 (4th Cir. 2015), decided after the district court's judgment in this case, we agreed with

Henderson, ruling that the "ALJ independently must identify conflicts between the expert's testimony and the [DOT]" and that merely asking the VE if there were any conflicts was insufficient. In addition, we held that a VE's testimony that apparently conflicts with the DOT can only provide substantial evidence if the ALJ received an explanation from the VE explaining the conflict and determined both that the explanation was reasonable and that it provided a basis for relying on the VE's testimony rather than the DOT. See id. at 209-10. Noting that a Social Security Administration hearing is not adversarial, we decided that an ALJ has not fully developed the record if it contains an unresolved conflict between the VE's testimony and the DOT and that an ALJ errs if he ignores an apparent conflict on the basis that the VE testified that no conflict existed. See id. at 210. We determined that, because there was no explanation regarding the apparent conflict, there was no reasonable basis for relying on the VE's testimony, and the testimony, thus, could not provide substantial evidence for a denial of benefits. Id. at 211.

We conclude that, on the basis of Pearson, the ALJ erred by relying on the VE's conclusory testimony that there was no conflict between his testimony and the DOT. We note that there is an apparent conflict between an RFC that limits Henderson to one-to-two step instructions and GED Reasoning Code 2, which

10

requires the ability to understand detailed instructions. Thus, under Pearson, the VE's testimony did not provide substantial evidence that there was work that Henderson could do given his RFC. The VE did not explain the apparent conflict, the VE's conclusory statement that a conflict did not exist was insufficient, and the ALJ did not inquire further. Accordingly, we reverse the district court's conclusion that substantial evidence supported the ALJ's conclusion that work that Henderson could perform existed in significant numbers in the national economy and direct the district court to remand the case to the Commissioner with instructions to consider the impact of Pearson.

In sum, we affirm in part, reverse in part, and remand with instructions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

AFFIRMED IN PART,
REVERSED IN PART,
AND REMANDED
