**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-2192

MATTHEW DANA LINGER,

> Plaintiff - Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY,

> Defendant - Appellee.

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg.  Thomas S. Kleeh, Chief District Judge.  (1:21-cv-00102-TSK-RWT)

Argued:  September 25, 2024                          Decided:  January 7, 2025

Before GREGORY and HARRIS, Circuit Judges, and John A. GIBNEY, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Reversed and remanded with instructions by unpublished opinion.  Judge Gregory wrote the opinion, in which Judge Harris and Judge Gibney joined.

**ARGUED:**  Dana Wayne Duncan, DUNCAN DISABILITY LAW, SC, Nekoosa, Wisconsin, for Appellant.  David E. Somers, III, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland, for Appellee.  **ON BRIEF:**  Brian C. O'Donnell, Associate General Counsel, David N. Mervis, Senior Attorney, Office of Program Litigation, Office of the General Counsel, SOCIAL SECURITY ADMINISTRATION, Baltimore, Maryland; William Ihlenfeld, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wheeling, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

Plaintiff-Appellant Matthew D. Linger appeals the district court's order affirming the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for disability benefits. In his application, he alleged cognitive decline and other medical impairments. Following a formal hearing, the Administrative Law Judge ("ALJ") determined Linger had moderate limitations in select areas of cognitive function. Nevertheless, the ALJ limited Linger's Residual Functional Capacity ("RFC"), found that he could perform other simple, routine jobs, and ultimately denied Linger's application for disability benefits. Linger contends, *inter alia*, the ALJ (1) failed to build a logical bridge from his findings regarding Linger's mental limitations to the RFC, and (2) gave too little weight to the opinions of doctors Goudy and McCullough and too much weight to Linger's ability to perform daily activities, and as such, made findings that were not supported by substantial evidence.

We agree with Linger that the ALJ failed to build a logical bridge and support his findings with substantial evidence, and accordingly, reverse and remand on these grounds. In light of the fact such errors by the ALJ are dispositive, the Court need not reach a determination on Linger's remaining arguments that assert the ALJ erred in evaluating the medical opinions under 20 C.F.R. Section 404.1520c and the Appeals Council erred in its assessment of the additional evidence.

2

## I.

At the time of his application, Linger was a 35-year-old man that lived with his mother and four-year-old daughter in West Virginia.  At a very young age, Linger underwent surgery and radiation for his brain tumor.  J.A. 409.  Linger started experiencing decline in his physical health in recent years, in addition to ongoing learning disabilities.

In October 2018, Linger was diagnosed with coronary artery disease ("CAD"), which required coronary artery bypass grafting ("CABG"), as well as several tumors and cysts.  J.A. 442, 447.  Linger underwent CABG to treat his CAD but was never treated for other issues that were found later, such as the Pancoast tumor on his right lung, congenital duplication cyst of esophagus, and mass on the thoracic vertebra.  J.A. 451.  Linger visited the hospital frequently for post-surgery follow-ups, as well as evaluations for his other physical impairments.  As a result of his health complications, Linger has an extensive medical record.  This includes post-CABG follow-up reports, some of which indicated post-surgery improvements and some indicating otherwise.  For example, on June 21, 2019, Linger went in for a routine evaluation, which reported that he was "doing well."  J.A. 760.  However, about two weeks later, Linger fainted and went to the hospital.  J.A 761.

Another medical record to highlight is Linger's visit to Dr. Bhatia, a neurologist, for the tingling in his right arm in October 2019.  J.A. 793–94.  Dr. Bhatia reported a mass on the thoracic vertebra to be a cause of the tingling.  J.A. 796.  Additionally, his report indicated normal attention, concentration, and memory.  J.A. 795.

Amid his health complications, Linger applied for disability benefits, alleging onset of disability since November 1, 2018.  The Commissioner denied his original application

in August 2019. J.A. 158. The Commissioner reconsidered Linger's original application but denied it in May 2020. J.A. 178. In June 2020, Linger filed a written request for hearing that was to be held in October 2020. J.A. 187, 951. During this process, Linger saw three experts for a mental assessment: Larry Legg, M.A., Dr. Tony Goudy, Ph.D., and Rodney McCullough, M.A.

In May 2019, Linger met with Legg, a consultative examiner. Legg performed a clinical interview, mental status examination, intellectual assessment, and achievement assessment. J.A. 746–49. During the assessment, Linger alleged difficulty in comprehending and learning; a learning disability; spending his day sitting around the house; and completing minimal types of chores and outside activities with frequent breaks. J.A. 747, 750. Legg noted Linger had a Full-Scale IQ of 60 (placing Linger in the 0.4 percentile), reading and spelling levels of a fourth grader, and a math level of a second grader. J.A. 748. Ultimately, Legg diagnosed Linger with Borderline Intellectual Functioning ("BIF") with moderate limitations in mental functioning. J.A. 746, 749–50.

Dr. Goudy, a psychologist, saw Linger in May and October of 2020. J.A. 885. Dr. Goudy referred to objective testing results seen in Legg's medical opinion—such as Linger's Full-Scale IQ of 60 and elementary level of reading, spelling, and math—and other evidence, including an affidavit from Darrell Keener, Linger's former coworker at Precision Pipeline. J.A. 886–90. Dr. Goudy also reviewed Legg's evaluation and noted discrepancies, such as Legg's finding that Linger was capable of handling finances despite performing at a second-grade math level. J.A. 886. Dr. Goudy also assessed Linger's overall inability to articulate. *Id.* Based on all the evidence, Dr. Goudy concluded that Linger had marked limitations in

4

understanding, remembering, or applying information; marked limitation in concentrating, persisting, or maintaining pace; and marked limitation in adapting or managing self. J.A. 890–91. Thus, he concluded that Linger could not pursue any substantial gainful activity. *Id.* Dr. McCullough, a telehealth psychologist who interviewed Linger, also reported similar findings and conclusions as Dr. Goudy. J.A. 939–46.

## II.

### A.

On October 29, 2020, the ALJ held a formal hearing on Linger's application. During the hearing, Linger testified to his work and medical history, as well as his daily activities. On several occasions, he stated that he could not recall or remember the answers to the ALJ's questions related to work history. J.A. 970–79. In many instances, Linger would affirm the ALJ's statements but struggled to provide his own answer. For example, in the hearing, the ALJ asked, "I'm seeing earnings in 2018 from Walmart. Did you work for Walmart for a period of time, sir?" J.A. 967. Linger answered affirmatively. *Id.* The ALJ followed up by stating that the record reflected earnings from Walmart since 2016. *Id.* Linger affirmed again. *Id.* After establishing Linger's time of 2.5 years at Walmart as the longest duration of employment, the ALJ recapped Linger's many other jobs that were performed for shorter durations. *See* J.A. 966–75. In his most recent position as a laborer at Precision Pipeline, Linger claimed he was laid off because he couldn't follow directions very well. J.A. 966. Though the ALJ did not refer to it in the hearing, the affidavit of Linger's former coworker at Precision Pipeline, Darrell Keener, provides more insight. *See*

5

J.A. 377–78. Keener stated that Linger often had difficulties performing simple tasks and frequently needed help. J.A. 377. Linger had similar difficulties in articulating his medical history before the ALJ. *See* J.A. 970–79.

Linger also testified to his daily activities. For example, he drove three times a week, usually to a Walmart three miles down the road. J.A. 79. Linger cared for his daughter by making frozen or canned meals. J.A. 80, 980. He needed his mother's help with caring for his daughter, as well as with the finances. J.A. 79, 982. Linger also described his tingling right arm, leg cramps, decreased energy level, and shortness of breath in his day-to-day life. J.A. 79.

At the end of the hearing, a vocational expert offered possible employment options for Linger: final assembler, nut sorter, and ink printer. The expert based his opinion on the record, evidence, and the limitations set forth by the ALJ that were eventually adopted as the RFC, which is discussed herein.

**B.**

On December 3, 2020, the ALJ issued a decision denying Linger's application for disability benefits. In his decision, the ALJ followed the five-step evaluation as required under law. *See* 20 C.F.R. § 404.1520(a)(1).

Under the law, steps one through three ask: (1) whether the claimant is working; (2) if not, whether he has a "severe impairment"; and (3) if he does, whether the impairment "meets or equals a listed impairment." *See id.* § 404.1520. Satisfying step three warrants an automatic finding of disability, but if the claimant is unable to satisfy step three, then the ALJ must determine the claimant's RFC. *See id.* §§ 404.1520(d)-(e). The RFC is an

assessment of a claimant's ability to perform work activities on a sustained basis, despite his limitations. *See id.* In determining the claimant's RFC, the decision maker must evaluate "all" relevant record evidence, which is a holistic and fact-specific evaluation. *Id.* § 404.1520(e). After conducting the RFC assessment, the ALJ proceeds to step four to determine whether the impairment prevents the claimant from performing "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 404.1520(f).

The claimant carries the burden of proof at steps one through four. *See* 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(a). If a claimant carries his burden, the burden shifts to the Commissioner at step five to demonstrate that the impairment does not prevent the claimant from engaging in other substantial gainful employment. *See* 20 C.F.R. §§ 404.1520(g)(1), 404.1512(f). To do this, the Commissioner must present "evidence that demonstrates that other work exists in significant numbers in the national economy" that the claimant can do, given the RFC and vocational factors. *Id.* § 404.1560(c)(2).

In this case, at step one, the ALJ found that Linger had not engaged in substantial gainful activity. J.A. 76. At steps two and three, as relevant here, the ALJ found that Linger had severe mental impairments, but such mental impairments did not meet or equal a listed impairment. *Id.* Specifically, with respect to step three, "[i]n understanding, remembering, or applying information," the ALJ found Linger had moderate limitations. J.A. 78. The ALJ stated Linger "alleged he ha[d] difficulty remembering generally, understanding what [was] said to him, following instructions, completing tasks, and paying bills" but "also stated that he could perform simple maintenance, go to doctor's appointments, take medications, shop, and drive" and "the record show[ed] . . . [Linger]

7

was able to provide information about his health, describe his prior work history, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, and respond to questions from medical providers." *Id.*

In "interacting with others," the ALJ found Linger had mild limitations. J.A. 78. The ALJ stated Linger "alleged that he ha[d] difficulty getting along with others" but noted Linger was "also able to shop, spend time with friends and family, deal appropriately with authority, and live with others" and "the medical evidence show[ed] that [Linger] had a good rapport with providers, was described as pleasant and cooperative, had good interactions with non-medical staff, and appeared comfortable during appointments[.]" *Id.*

In concentrating, persisting, or maintaining pace, the ALJ found Linger had moderate limitations. J.A. 78. The ALJ stated Linger alleged "he ha[d] limitations in concentrating generally, focusing generally, following instructions, completing tasks, and maintaining a regular work schedule" but noted Linger also "said that he [was] . . . able to drive, watch TV, and handle his own medical care" and "the record fails to show any mention of distractibility and an inability to complete testing that assesses concentration and attention." *Id.*

In Linger's ability to adapt or manage himself, the ALJ found Linger had moderate limitations. J.A. 78. The ALJ stated Linger alleged "he ha[d] difficulties managing his mood" but noted Linger also stated "he [was] able to handle self-care and personal hygiene, care for children, and get along with caregivers" and "the objective evidence in the record showed [Linger] to have appropriate grooming and hygiene, no problem getting along well with providers and staff, normal mood and affect, and no problems with temper control."

8

*Id.* Hence, the ALJ found Linger's severe mental impairments did not meet or equal a listed impairment.

Before moving onto step four, the ALJ determined, based on his mental limitation findings and the evidence in the record, Linger's RFC as follows:

> To perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except no climbing; occasional balancing, stooping, kneeling, crouching, and crawling; avoid concentrated exposure to extreme heat or cold, vibration, irritants such as concentrated fumes, odors, dust, gases, or poor ventilation, and hazards such as heavy, dangerous machinery and unprotected heights; limited to simple, routine and repetitive 1 to 2 step tasks; requiring only simple decisions; with no fast paced production requirements such as assembly line work or piecemeal quotas; is capable of adapting to changes in the work environment, meaning a change in work responsibilities or work place, which are explained to the claimant ahead of time and implemented gradually over time; and can [have] occasional contact with coworkers, supervisors, and the general public.

J.A. 79.

In addition, the ALJ also addressed the mental opinions of doctors Goudy and McCullough. With respect to Dr. Goudy, the ALJ found Dr. Goudy "appear[ed] to have relied heavily upon [Linger's] subjective complaints and statements." J.A. 82. With respect to Dr. McCullough, the ALJ found Dr. McCullough "overstate[d] the extent of the severity" of Linger's mental limitations considering Linger's "[m]ental status evaluations throughout the record . . . also included normal attention, concentration, and memory." J.A. 83. As such, the ALJ found both doctors Goudy and McCullough's opinions unpersuasive and "not fully consistent with the totality of the objective record" because "the record . . . show[ed] [Linger] was able to maintain employment as a laborer in spite

9

of" his mental issues and was "able to perform many daily activities without significant issues." J.A. 82–83.

At steps four and five, the ALJ found Linger could not perform his past work and that, considering Linger's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Linger could perform, such as "final assembler," "nut sorter," and "ink printer." J.A. 84–85.  Accordingly, the ALJ found Linger "ha[d] not been under a disability, as defined in the Social Security Act, from November 1, 2018, through the date of this decision[.]"  J.A. 85.

## C.

On January 19, 2021, Linger requested review of the ALJ's decision from the Appeals Council.  J.A. 259–60.  In doing so, he also submitted two letters from Dr. Goudy and McCullough that clarified their respective original opinions.  J.A. 43, 104.  The Appeals Council denied Linger's request for review.  J.A. 16.  Then, on July 23, 2021, Linger appealed the Commissioner's decision to the Northern District of West Virginia. J.A. 3.  On appeal, both parties moved for summary judgment.  J.A. 4.  The magistrate judge issued a Report & Recommendation ("R&R") affirming the ALJ's denial of disability benefits.  J.A. 1013.  The R&R gave great deference to the ALJ and closely followed the ALJ's decision.  *Id.*  On September 22, 2022, the district judge adopted the R&R, granted the Commissioner's Motion for Summary Judgment, and dismissed the case. J.A. 1025.  Linger's appeal timely followed.

## III.

"This Court is authorized to review the Commissioner's denial of benefits under 42 U.S.C.A. § 405(g)[,]" *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012), and reviews a district court's ruling on a motion for summary judgment de novo, *Ladda v. Berryhill*, 749 Fed. Appx. 166, 168 (4th Cir. 2018). This Court must not "reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ." *Hancock*, 667 F. 3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)) (internal quotation marks omitted). Rather, this Court must give deference to the ALJ and consider "whether the ALJ examined all relevant evidence and offered a sufficient rationale in crediting certain evidence and discrediting other evidence." *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023).

## IV.

An ALJ must "build an accurate and logical bridge from the evidence to his conclusion[.]" *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 269 (4th Cir. 2017) (citing *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)). Additionally, an agency's factual findings on whether an applicant is entitled to benefits is "conclusive . . . so long as they are supported by 'substantial evidence.'" *Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020) (quoting *Biestek v. Berryhill*, 587 U.S. 97 (2019)). Under the substantial-evidence standard, "a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id*. Substantial evidence "consists of more than a mere scintilla of evidence but may be less

than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (quoting *Hancock,* 667 F.3d at 472).

Here, the ALJ failed to "build an accurate and logical bridge from the evidence to his conclusion[.]" *Brown*, 873 F.3d at 269. Specifically, the ALJ failed to bridge the logical gap between his mental findings at step three and his RFC determination before reaching step four. For example, while the ALJ determined certain functions he believed Linger could perform (e.g., "simple, routine and repetitive 1 to 2 step tasks" with "no fast paced production requirements"), J.A. 79, the ALJ said nothing about Linger's ability to perform them for a full workday, given the moderate limitations in Linger's ability to concentrate, persist, or maintain pace and moderate limitations in remembering information. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (finding ALJ erred in assessing claimant's RFC, stating while "the ALJ [] determined what functions he believe[d] [claimant] [could] perform, . . . he said nothing about [claimant's] ability to perform them for a full workday" and the ALJ's opinion was "sorely lacking in the analysis needed for us to review meaningfully those conclusions"). Similarly, the ALJ noted Linger had moderate limitations in his ability to adapt or manage himself, J.A. 78, but failed to explain how that would be sufficiently accommodated by having changes in work responsibilities "explained . . . ahead of time and implemented gradually." J.A. 79. Lastly, the ALJ failed to adequately define his RFC determination of "no fast paced production requirements[.]" J.A. 79. Though the ALJ provided some examples, there remains uncertainty as to the intended scope of the limitation, and such uncertainty precludes meaningful review as to whether there is a logical bridge between the evidence in the record

12

and the ALJ's conclusion. *Perry v. Berryhill*, 765 F. App'x 869, 872 (4th Cir. 2019) (finding the ALJ failed to offer a definition for his RFC determination of "non-production oriented work setting" and that "[a]s a result, we remain uncertain as to what the ALJ intended . . . and cannot meaningfully assess whether there is a logical bridge between the evidence in the record and the ALJ's conclusion") (internal quotation marks omitted). Hence, the ALJ failed to build an accurate and logical bridge from the evidence to his conclusion.

In addition, applying the substantial-evidence standard, the administrative record did not contain sufficient evidence to support the agency's factual determinations, e.g., that Linger was not entitled to benefits. *Shinaberry*, 952 F.3d at 120. Specifically, the ALJ gave too little weight to the opinions of doctors Goudy and McCullough. For example, with respect to Dr. Goudy, the ALJ found Dr. Goudy "appear[ed] to have relied heavily upon [Linger's] subjective complaints and statements." J.A. 82. However, such a conclusory observation by the ALJ is not helpful, for "[m]ental-health assessments normally are based on what the patient says, but only after the doctor assesses those complaints through the objective lens of [his] professional expertise" and "the trained physician, not the ALJ, is better positioned to discern 'true' complaints from exaggerated ones." *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019) (referencing *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015)). The ALJ made similar erroneous observations with respect to Dr. McCullough. Specifically, the ALJ found Dr. McCullough's opinion unpersuasive because Linger was "able to maintain employment as a laborer" and "perform many daily activities without significant issues." J.A. 83. However, the ALJ fails to

13

reconcile this finding with Dr. Goudy's opinion, which is much similar to Dr. McCullough's, as well as Keener's affidavit which highlighted Linger had difficulty following instructions at work.  In addition, and separately, while the ALJ notes Linger can perform daily activities such as going to doctor appointments, taking medication, shopping, and driving, J.A. 78, the ALJ fails to explain how Linger's ability to carry out daily activities translates to a full workday, or is inconsistent with Linger's assertion that he is unable to sustain full-time work.  *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 101 (4th Cir. 2020) (finding "[a] claimant's inability to sustain full-time work due to pain and other symptoms is often consistent with her ability to carry out daily activities" and as such, "substantial evidence does not support the ALJ's conclusion" to the contrary).  Hence, the administrative record did not contain sufficient evidence to support the agency's factual determination.

Accordingly, the ALJ erred in building a logical bridge from the evidence to his conclusion and failed to support his findings with substantial evidence.

## V.

Under 42 U.S.C. § 405(g), this Court has the authority "to reverse the Commissioner's decision with or without the cause for a rehearing." *Shelley C.*, 61 F.4th at 369.  "[W]here the record clearly establishes the claimant's entitlement to benefits and another ALJ hearing on remand would serve no useful purpose [,]" we, along with our sister circuits, have awarded disability benefits without remand for rehearing.  *Id.*  This is

14

especially so when a remand for another hearing "would be not only pointless, but also unjust." *Arakas*, 983 F.3d at 112.

Given our analysis of the record, it is evident that the ALJ failed to build a logical bridge and consider the record's substantial evidence that all pointed to Linger's disability. Thus, we hold that the record as a whole clearly establishes, without doubt, Linger's disability. *Id.*; *Shelley C.*, 61 F.4th at 368–69. Considering that six years has passed since Linger applied for disability benefits, we find that remanding for a rehearing would only further "delay justice." *Arakas*, 983 F.3d at 105 (holding that remanding for further hearing would be delaying justice when the record clearly established the claimant's disability and has been undergoing litigation for ten years).

Therefore, we reverse the Commissioner's decision and remand with instructions to grant disability benefits.

*REVERSED AND REMANDED WITH INSTRUCTIONS*