**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MARIA GUTIERREZ,
　　　　*Plaintiff-Appellant,*

　　　　v.

CAROLYN COLVIN,
Commissioner of Social
Security,
　　　　*Defendant-Appellee.*

No. 14-35231

D.C. No.
3:13-cv-00448-MO

ORDER AND
OPINION

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted July 7, 2016
Portland, Oregon

Filed November 29, 2016

Before: Carlos T. Bea and John B. Owens, Circuit Judges
and Larry A. Burns,* District Judge.

Opinion by Judge Burns

---

* The Honorable Larry A. Burns, District Judge for the U.S. District Court for the Southern District of California, sitting by designation.

## SUMMARY[**]

---

### Social Security

The panel withdrew the memorandum disposition filed July 29, 2016, and replaced it with an opinion affirming the district court's holding that a Social Security administrative law judge ("ALJ") did not err by not asking the vocational expert more specific questions regarding a claimant's ability to reach overhead as part of a cashier job, in connection with the claimant's application for Social Security disability benefits.

The *Dictionary of Occupational Titles* is a resource compiled by the U.S. Department of Labor that details the specific requirements for different occupations. If a vocational expert's opinion that a claimant is able to work conflicts with the requirements listed in the *Dictionary*, then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant was disabled.

The panel held that there was no apparent or obvious conflict between the expert's testimony that claimant could work as a cashier, and the *Dictionary*'s general statement that cashiering requires frequent reaching. The panel further held that given how uncommon it was for most cashiers to have to reach overhead, there was no obvious conflict between the expert testimony and the *Dictionary*.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

James S. Coon (argued), Swanson Thomas Coon & Newton, Portland, Oregon, for Plaintiff-Appellant.

Lars J. Nelson (argued), Assistant Regional Counsel; David Morado, Regional Chief Counsel; Office of the General Counsel, Region X, Social Security Administration; Seattle, Washington; Ronald K. Silver, Assistant United States Attorney; United States Attorney's Office, Portland, Oregon; for Defendant-Appellee.

**ORDER**

Defendant-Appellee's request for publication, filed, September 20, 2016, is **GRANTED**. The original mandate that issued on September 21, 2016 is recalled. The memorandum disposition filed July 29, 2016 is withdrawn and replaced with an opinion filed together with this order. A revised memorandum disposition addressing issues not addressed in the opinion is also filed with this order. Further petitions for rehearing or rehearing en banc may be filed.

**OPINION**

BURNS, District Judge:

American citizens (and certain aliens) who believe they can't work because of a medical impairment may apply to the Social Security Administration for disability benefits. An agency representative reviews the application and makes a disability determination. If the applicant disagrees with the

determination, he or she has the right to a hearing before an administrative law judge ("ALJ").

At the hearing, the ALJ must follow a five-step evaluation process to determine if the applicant is disabled and entitled to benefits. 20 C.F.R. § 404.1520. At step five – the only step relevant to this appeal – the ALJ considers the applicant's background and residual functional capacity, that is, what physical tasks the applicant can still perform despite his or her limitations, to decide if the applicant can make an adjustment to some other available job. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

To aid in making this determination, the ALJ may rely on an impartial vocational expert to provide testimony about jobs the applicant can perform despite his or her limitations. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012). The *Dictionary of Occupational Titles* ("*Dictionary*"), a resource compiled by the Department of Labor that details the specific requirements for different occupations, guides the analysis. If the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the *Dictionary*, then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled. SSR 00-4P, 2000 WL 1898704, at *2 (2000). An applicant is entitled to disability benefits unless the ALJ finds that the person is capable of making the adjustment to other work.

I

In this case, Maria Gutierrez appeals the district court's judgment affirming the ALJ's denial of her application for disability benefits. It is undisputed that Ms. Gutierrez can't lift more than five pounds with her right arm or lift that arm above her shoulder, but she has no limitations to her left arm.

At her benefits hearing, the ALJ asked the vocational expert a hypothetical question: Assuming Ms. Gutierrez has the above mentioned limitations, is there any job she can perform? The expert eliminated almost all jobs from the calculus, but opined that Ms. Gutierrez could work as a cashier. He estimated that there were 2,000 cashier jobs available statewide in Oregon and 200,000 such jobs nationwide. The ALJ then specifically asked the expert if his opinion was consistent with the description of cashiering set forth in the *Dictionary*, and the expert said it was. After considering all of the evidence, the ALJ determined that although Ms. Gutierrez had some restrictions to her right arm – including the inability to reach above shoulder level – she could successfully adjust to work as a cashier and was not disabled.

Ms. Gutierrez's principal argument[1] on appeal is that because the *Dictionary* definition specifies that cashiers must engage in frequent "reaching," the ALJ erred at step five by not asking the expert more specific questions regarding her ability to perform the job given that she can't reach overhead with her right arm. Resolving this argument requires us to determine whether *overhead* reaching is such a common and obvious part of cashiering that the ALJ should have recognized a conflict and questioned the expert more closely before concluding that Ms. Gutierrez could work as a cashier.

II

Our review is de novo. *Mayes v. Massanari*, 276 F.3d 453, 458 (9th Cir. 2001). We must affirm the ALJ's findings

---

[1] We addressed her other arguments in a memorandum filed simultaneously with this opinion.

of fact "if they are supported by 'substantial evidence' and if the proper legal standard was applied." *Id*. at 458–59.

## III

To begin with, it's important to keep in mind that the *Dictionary* refers to "occupations," not to specific jobs. "Occupation" is a broad term that includes "the collective description" of "numerous jobs" and lists "maximum requirements" of the jobs as "generally performed." SSR 00-4P, 2000 WL 1898704, at *2–3. Because of this definitional overlap, not all potential conflicts between an expert's job suitability recommendation and the *Dictionary*'s listing of "maximum requirements" for an occupation will be apparent or obvious. And, to reiterate, an ALJ need only follow up on those that are.

The *Dictionary's* definition of "cashier" illustrates the definitional overlap. It's a windy, highly technical, 1000-word effort that specifies that a cashier may need to "reach frequently," but also be able to read "adventure stories and comic books," write in "cursive," "interpret bar graphs," and follow "instructions for assembling model cars." *Dictionary, 211.462-010 (Cashier II)*, 1991 WL 671840 (1991). While the ability to read, write, and follow assembly instructions may roughly correlate to the aptitude necessary to perform some cashiering jobs, those abilities aren't necessarily essential for most cashiers. Indeed, the examples given by the *Dictionary* – "Cafeteria Cashier," "Store Cashier," "Change-Booth Cashier" – contemplate such mundane functions as making change, operating a cash register, selling tickets, and scanning Universal Product Codes – none of which require overhead reaching. *Id.*; *see also Guidelines for Retail Grocery Stores: Ergonomics for the Prevention of Musculoskeletal Disorders*, U.S. Department of Labor, 10, 17–18 (2004),

www.osha.gov/Publications/osha3192.pdf (noting a cashier should "work with items at about elbow height").

For a difference between an expert's testimony and the *Dictionary's* listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the *Dictionary's* listing of job requirements that are essential, integral, or expected. This is not to say that ALJs are free to disregard the *Dictionary's* definitions or take them with a grain of salt – they aren't. But tasks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about. Likewise, where the job itself is a familiar one – like cashiering – less scrutiny by the ALJ is required.

Here, the ALJ didn't err because there was no apparent or obvious conflict between the expert's testimony that Ms. Gutierrez could perform as a cashier, despite her weight bearing and overhead reaching limitations with her right arm, and the *Dictionary's* general statement that cashiering requires frequent reaching. While "reaching" connotes the ability to extend one's hands and arms "in any direction," SSR 85-15, 1985 WL 56857, at *7 (1985), not every job that involves reaching requires the ability to reach overhead. Cashiering is a good example.

According to the *Dictionary*, "frequent reaching" is required of both cashiers and stock clerks. But anyone who's made a trip to the corner grocery store knows that while a clerk stocking shelves has to reach overhead frequently, the typical cashier never has to. To be sure, an ALJ must ask follow up questions of a vocational expert when the expert's testimony is either obviously or apparently contrary to the *Dictionary*, but the obligation doesn't extend to unlikely situations or circumstances. Had the expert

opined that Ms. Gutierrez could stock shelves or wash windows, the conflict would have been apparent and obvious, and the ALJ would have needed to follow up with more specific questions. But where the frequency or necessity of a task is unlikely and unforeseeable – as it is with cashiers having to reach overhead – there's no similar obligation.

Given how uncommon it is for most cashiers to have to reach overhead, we conclude that there was no apparent or obvious conflict between the expert's testimony and the *Dictionary*. The requirement for an ALJ to ask follow up questions is fact-dependent. While we acknowledge that there may be exceptional circumstances where cashiers have to reach overhead,[2] this case doesn't present any. Responding to the ALJ's hypothetical question that specifically accounted for Ms. Gutierrez's limitations, the expert eliminated all jobs that would have required weight bearing and overhead reaching with her right arm, identifying a single job she could perform despite her limitations. The ALJ was entitled to rely on the expert's "experience in job placement" to account for "a particular job's requirements," SSR 00-4P, 2000 WL 1898704, at *2, and correctly did so here.

**AFFIRMED**.

---

[2] An example of cashiering that could involve overhead reaching is where a store sells restricted merchandise, such as cigarettes, which are kept overhead. But even in this atypical example, Ms. Gutierrez's reaching restriction would not have prevented her from reaching overhead with her *left* arm.