17-2591-cv
*Lockwood v. Commissioner*

**In the**

# United States Court of Appeals
## for the Second Circuit

---

AUGUST TERM 2018

No. 17-2591-cv

STEPHEN LOCKWOOD,
*Plaintiff-Appellant,*

v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,
*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Northern District of New York

---

SUBMITTED: AUGUST 15, 2018
DECIDED: JANUARY 23, 2019

---

Before: CABRANES and POOLER, *Circuit Judges*, and OETKEN, *District Judge.*[*]

———

Plaintiff-Appellant Stephen Lockwood appeals from a judgment of the United States District Court for the Northern District of New York (Christian F. Hummel, *Magistrate Judge*), upholding the decision of Defendant-Appellee Commissioner of Social Security to deny his application for disability insurance benefits. We conclude that the Commissioner's decision was not supported by substantial evidence because it relied on testimony from a vocational expert that appeared to be in conflict with the authoritative guidance set out in the Department of Labor's *Dictionary of Occupational Titles*. Because the Commissioner was not entitled to rely on this testimony without first identifying and inquiring into the apparent conflict, the District Court erred in declining to set aside the Commissioner's benefits decision.

Accordingly, we **REVERSE** the District Court's judgment and **REMAND** for further proceedings.

———

> Patrick G. Radel, Getnick Livingston Atkinson & Priore, LLP, Utica, NY, *for Plaintiff-Appellant*.

———

[*] Judge J. Paul Oetken, of the United States District Court for the Southern District of New York, sitting by designation.

Andreea L. Lechleitner, Special Assistant United States Attorney, (Stephen P. Conte, Regional Chief Counsel – Region II, *on the brief*), Office of the General Counsel, United States Social Security Administration, New York, NY, *for* Grant C. Jaquith, United States Attorney for the Northern District of New York, Syracuse, NY, *for Defendant-Appellee*.

---

J. PAUL OETKEN, *District Judge*:

Plaintiff-Appellant Stephen Lockwood appeals from a June 21, 2017 judgment of the United States District Court for the Northern District of New York (Christian F. Hummel, *Magistrate Judge*), upholding the decision of Defendant-Appellee Commissioner of Social Security ("Commissioner") to deny Lockwood's application for disability insurance benefits. On appeal, Lockwood argues among other things that the District Court should have set aside the benefits denial as unsupported by substantial evidence because the denial relied on expert testimony that contained an unexamined apparent conflict with an authoritative Department of Labor publication, the *Dictionary of Occupational Titles*. We agree with Lockwood on this point and therefore **REVERSE** the District Court's judgment and **REMAND** for further proceedings.

# I. BACKGROUND

## A. Factual Background

On November 11, 2011, Lockwood was injured in an automobile accident while working as a landscaper. In the following months, Lockwood experienced abnormal sensation in his hands and severe pain in his neck and was, according to Drs. Srinivasan Mani and Mark Smith, disabled from performing his regular job as a consequence. In terms of diagnosis, the doctors believed that the unusual feeling in Lockwood's hands might be a result of carpal tunnel syndrome and that the neck pain might be attributable to herniated disks in Lockwood's cervical spine.

To address the neck pain, Dr. Smith advised Lockwood to undergo disk-repair surgery. Dr. Richard Tallarico, an orthopedic surgeon, concurred in this advice, and he performed the recommended surgery on November 7, 2012.

Following the surgery, Lockwood consulted several times with Nurse Practitioner Catherine Tomaiuoli. In an early consultation, Nurse Tomaiuoli observed that Lockwood's neck pain persisted and that he had a reduced range of motion in his left shoulder, as well as difficulty with certain arm movements. She recommended that Lockwood receive a magnetic resonance imaging ("MRI") scan and that he restrict the amount of weight he lifted.

In June 2013, Lockwood received the recommended MRI. Based on the results, Nurse Tomaiuoli referred Lockwood to Dr. John

Cannizzaro, an orthopedic surgeon, who examined Lockwood and on July 16, 2013, concluded that his shoulder was 30% disabled. During a subsequent consultation, Dr. Tallarico, the surgeon who had operated on Lockwood's neck, deemed Lockwood to be 75% impaired as a result of his continuing neck and shoulder pain and his limited range of motion. Dr. Tallarico considered Lockwood's disability to be permanent.

Meanwhile, Lockwood was following up on his doctors' suggestion that he suffered from carpal tunnel syndrome. On May 22, 2013, he received carpal tunnel release surgery on his right wrist from Dr. Kevin Setter. During a follow-up examination with Nurse Practitioner Carmelita Woods, however, Lockwood reported that he was continuing to experience tenderness and abnormal sensation in his hands. After examining Lockwood, Nurse Woods concluded that Lockwood had 50% and 25% impairments in his right and left hands, respectively, and that carpal tunnel release surgery on the left hand would be appropriate. Dr. Setter performed that surgery on July 1, 2013.

## B. Administrative Proceedings

On July 26, 2013, Lockwood submitted an application to the Commissioner pursuant to the Social Security Act, 42 U.S.C. § 301 *et seq.*, seeking disability insurance benefits as of the date of his automobile accident. At the Commissioner's request, Lockwood received an examination from orthopedist Dr. Tanya Perkins-Mwantuali. The doctor found that Lockwood had "moderate

5

limitation with lifting, pushing, pulling, reaching forward and reaching above the level of the shoulder, and carrying with the use of the left arm." Admin. Record ("R.") 330.[1] She also determined that Lockwood had mild to moderate limitations with respect to activities that require a full range of neck motion. Following this assessment, the Commissioner denied Lockwood's benefits application.

Lockwood then requested a hearing before an Administrative Law Judge ("ALJ"). At the resultant June 2, 2014 hearing, the ALJ heard testimony from Lockwood and from Dian Heller, a vocational expert. Heller offered her opinion that a person of Lockwood's age, education, and experience could perform the physical tasks associated with three specific jobs that collectively number around 154,000 nationally, as long as he retained the ability to perform light work that did not require any overhead reaching.

On October 27, 2014, the ALJ issued a written opinion denying benefits. Although the ALJ found that Lockwood suffered from severe impairments, she concluded that he was nonetheless capable of performing certain physical activities that, among other things, did not involve any "overhead reaching." R. 19–20. Relying on Heller's testimony regarding the three jobs that people with comparable limitations are capable of performing, and finding that these jobs exist in significant number in the national economy, the ALJ concluded that Lockwood was not entitled to benefits.

---

[1] The Administrative Record is available at Docket Number 8 of the District Court docket. *Lockwood v. Commissioner*, No. 6:16-CV-0648 (N.D.N.Y.).

Lockwood sought review from the Social Security Appeals Council. The Appeals Council granted review and, in a May 3, 2016 decision, adopted the ALJ's opinion as its own in all relevant respects. With that decision, the Commissioner's denial of Lockwood's benefits application became final.

### C. Federal Court Proceedings

Dissatisfied by the result of the agency proceedings, Lockwood turned to federal court. On June 7, 2016, Lockwood filed a complaint in the United States District Court for the Northern District of New York, seeking review of the benefits denial. *See* 42 U.S.C. § 405(g) (authorizing judicial review of the Commissioner's final decisions). Following submission of the administrative record, both Lockwood and the Commissioner moved for judgment on the pleadings.

In support of his motion, Lockwood advanced two arguments that are relevant here. First, he argued that the Commissioner had relied on Heller's testimony without first probing into an apparent conflict between that testimony and an authoritative Department of Labor publication, the *Dictionary of Occupational Titles* (the "*Dictionary*").[2] Specifically, he pointed out that Heller had identified three jobs capable of being performed by a person who cannot reach overhead, but that the *Dictionary*'s descriptions of these jobs state without qualification that each requires "reaching." Second, he

---

[2] This opinion's references to the *Dictionary* also include where relevant the *Dictionary*'s companion publication, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*.

argued that the Commissioner, in assessing his physical capabilities, failed to address Nurse Woods's observation that he had respective impairments of 50% and 25% in his right and left hands.

The District Court rejected both of Lockwood's arguments. As for the first argument, the District Court held that even if there had been a conflict between Heller's testimony and the *Dictionary*, the conflict was "reconciled because [Heller's] testimony indicate[d] that she based her opinion on her own experience observing the performance of the identified jobs." *Lockwood v. Comm'r of Soc. Sec.*, No. 6:16-CV-0648, 2017 WL 2656194, at *5 (N.D.N.Y. June 20, 2017). Therefore, it was "possible to reasonably infer" that Heller's experience was her basis for testifying "that [Lockwood] would be able to perform [the jobs in question] despite a limitation for avoidance of overhead reaching," notwithstanding any contrary indications in the *Dictionary*. *Id.*

As for Lockwood's second argument, the District Court held that the omission of Nurse Woods's opinion had been harmless. *See id.* at *6–8. In the District Court's view, Nurse Woods's opinion was "ambiguous as to what precisely [Lockwood] is limited to doing with his hands" and so did not undermine the Commissioner's conclusion that Lockwood could perform the jobs Heller had identified. *Id.* at *7.

Having so reasoned, the District Court granted the Commissioner's motion for judgment on the pleadings and denied Lockwood's. This appeal followed.

## II.    DISCUSSION

On appeal, Lockwood renews his arguments that the benefits denial must be set aside because the Commissioner (1) failed to examine an apparent conflict between Heller's testimony and the *Dictionary* and (2) failed to address Nurse Woods's opinion regarding Lockwood's hand impairments.  We agree with Lockwood on the first point and therefore reverse the District Court's judgment and remand for further proceedings.  In light of that holding, we need not address Lockwood's second argument.

### A. Standard of Review

We may reverse the District Court's decision to uphold the Commissioner's denial of benefits only if our "plenary review of the administrative record" reveals that "the [Commissioner's] factual findings are not supported by 'substantial evidence'" or that "the [benefits] decision is based on legal error."  *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)).

### B.  Analysis

Our analysis begins and ends with Lockwood's argument that the Commissioner's finding that he is capable of performing the three jobs identified by Heller was not based on substantial evidence.  In Lockwood's view, the evidence upon which the Commissioner relied in determining what physical demands those jobs entail—Heller's testimony—cannot constitute substantial evidence because it contains an apparent, unresolved conflict with the *Dictionary*.  We agree and

therefore conclude that the District Court erred in declining to set aside the Commissioner's benefits denial.

Under the Social Security Act, a claimant is ineligible for disability insurance benefits unless, among other things, he suffers an impairment "of such severity that he . . . cannot, considering his age, education, and work experience, engage in any . . . kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A); *see also id.* § 423(a)(1)(E).  Accordingly, even where a claimant is impaired to the point that he can no longer perform his previous work, the Commissioner may properly deny benefits if, considering the claimant's "residual functional capacity"—*i.e.*, his physical capabilities notwithstanding his impairment, 20 C.F.R. § 404.1545—"and [his] age, education, and work experience," the claimant "can make an adjustment to other work," *id.* § 404.1520(a)(4)(v).  If benefits are denied on this basis, however, the Commissioner bears the burden of "show[ing] that there is work in the national economy that the claimant can do."  *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

A 2000 Social Security Administration Policy Interpretation Ruling (the "Ruling") governs the Commissioner's assessment of whether any particular job can accommodate a given claimant's physical limitations.  Under the Ruling, the Commissioner "rel[ies] primarily on the [*Dictionary*] . . . for information about the [job's] requirements" but "may also use [vocational experts] . . . to resolve complex vocational issues."  SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).  If the Commissioner does consider the testimony of such

10

experts, however, she must be alert to the possibility of "apparent unresolved conflict[s]" between the testimony and the *Dictionary*. *Id.* In light of this possibility, the Ruling tasks the Commissioner with "an affirmative responsibility to ask about any possible conflict," *id.* at *4, and to "elicit a reasonable explanation for [any such] conflict before relying on the [vocational expert's testimony]," *id.* at *2.

Lockwood now argues, as he did in the District Court, that the Commissioner in this case neglected the Ruling's requirements. In denying Lockwood's benefits application, the Commissioner concluded that Lockwood was "not disabled" within the meaning of the Social Security Act because "there [were] jobs that exist[ed] in significant numbers in the national economy that [he could] perform." R. 6–7. The Commissioner reasoned that even though Lockwood suffered an impairment that required him to "avoid all overhead reaching tasks," Heller's testimony had established that at least three specific jobs existing collectively in significant number in the national economy would accommodate this limitation. R. 6. But, as Lockwood points out, the *Dictionary* establishes that each of these three jobs requires occasional or frequent "reaching." *See Dictionary of Occupational Titles* 295.357-018, 1991 WL 672589; *id.* 205.367-014, 1991 WL 671715; *id.* 729.684-054, 1991 WL 679729. And because a 1985 Social Security Program Policy Statement defines "reaching" as "extending the hands and arms *in any direction*," SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985) (emphasis added), Lockwood goes on, the *Dictionary* raises a potential inconsistency with Heller's testimony that a claimant with a restriction on overhead reaching is capable of

11

performing the three jobs at issue. In his view, then, the Ruling required the Commissioner to probe this apparent conflict before relying on Heller's testimony.

We agree. As the Fourth Circuit has persuasively explained, the Ruling mandates that whenever the Commissioner intends to "rely[] on [a] vocational expert's testimony," she must identify and inquire into all those areas "where the expert's testimony *seems to* . . . conflict with the *Dictionary*." *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015) (emphasis added). In other words, the Ruling requires the Commissioner to "obtain a reasonable explanation" for any "*apparent*"—even if non-obvious—conflict between the *Dictionary* and a vocational expert's testimony.[3] SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added). In both the 1985 Policy Statement and common usage, "reaching" includes overhead reaching. *Cf. Selian v. Astrue*, 708 F.3d 409, 422 (2d Cir. 2013) (per curiam) (suggesting that the inability to reach above one's head may be inconsistent with a job that requires reaching). Testimony that a claimant with overhead reaching limitations is capable of performing a job that the *Dictionary* describes as requiring "reaching," then, creates at least an *apparent* conflict that triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony. *See, e.g.*, *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006) (describing such testimony as raising "exactly

---

[3] To the extent that other courts have understood the Ruling's reference to an "apparent conflict" to refer to a conflict that is "obvious," *see, e.g.*, *Gutierrez v. Colvin*, 844 F.3d 804, 808–09 (9th Cir. 2016), we respectfully disagree for the reasons the Fourth Circuit has cogently articulated, *see Pearson*, 810 F.3d at 209–10.

12

the sort of inconsistency the [Commissioner] should . . . resolve[]”); *see also Pearson*, 810 F.3d at 210–11 (similar); *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632–33 (8th Cir. 2014) (similar).

The Commissioner’s arguments to the contrary do not persuade us. First, she suggests that there is no conflict between the expert testimony and the *Dictionary* because describing a job as requiring “reaching” does not necessarily establish that it requires overhead reaching. *See Gutierrez v. Colvin*, 844 F.3d 804, 808–09 (9th Cir. 2016); *see also Segovia v. Astrue*, 226 F. App’x 801, 804 (10th Cir. 2007) (“[E]ven a job requiring frequent reaching does not necessarily require more than occasional *overhead* reaching.” (emphasis in original)). But while “this Court could guess” what the three jobs Heller identified “require in reality, it [was] the [Commissioner’s] duty to elicit an explanation from [Heller] as to whether th[ose] occupations actually require . . . overhead reaching.” *Spears v. Colvin*, No. 15-CV-6236, 2016 WL 4973890, at *5 (W.D.N.Y. Sept. 19, 2016). The importance of teasing out such details is precisely why the Commissioner bears an “affirmative responsibility” to ask about “*any possible conflict* between [vocational expert] evidence and information provided in the [*Dictionary*].” SSR 00-4p, 2000 WL 1898704, at *4 (emphasis added). Absent such an inquiry, the Commissioner lacks a substantial basis for concluding that no such conflicts *in fact* exist. *See Washington v. Comm’r of Soc. Sec.*, 906 F.3d 1353, 1366 (11th Cir. 2018) (“We take the word ‘apparent’ [as used in the Ruling] to mean ‘seeming real or true, but not necessarily so.’” (quoting *Pearson*, 810 F.3d at 209)).

13

Second, the Commissioner contends that the *Dictionary*'s narrative descriptions of the three jobs at issue contain no express reference to overhead reaching. Thus, the Commissioner invites us to disregard the apparent conflict between Heller's testimony and the physical requirements enumerated in the *Dictionary*'s occupational descriptions. *See Burgess v. Colvin*, No. 13-CV-6177, 2014 WL 1875360, at *13 (W.D.N.Y. May 9, 2014) (consulting the narrative descriptions of certain jobs requiring "reaching" to conclude that the jobs are consistent with an overhead-reaching limitation). This argument, though, fails for essentially the reasons given above. While the *Dictionary*'s narrative descriptions certainly make it conceivable that the three jobs Heller identified do not require overhead reaching, the Commissioner bore the burden of showing that Lockwood is actually capable of performing those jobs. *See Poupore*, 566 F.3d at 306. If the Commissioner wished to rely on Heller's expert testimony to carry that burden, the Ruling makes clear that she was obliged to identify and resolve the *apparent* conflict between that testimony and the *Dictionary*, even if there is a chance that, upon inquiry, no *actual* conflict would have emerged.[4]

---

[4] For the same reason, we decline to follow the District Court in "infer[ring]" that Heller's personal observations of the jobs about which she testified led her to conclude that those jobs do not entail overhead reaching. *Lockwood*, 2017 WL 2656194, at *5. While Heller's observations may well explain the apparent discrepancy between her testimony and the *Dictionary*, the fact remains that it is the Commissioner's responsibility to "obtain a reasonable explanation" for any such discrepancies, and not this Court's obligation to concoct one *post hoc*. SSR 00-4p, 2000 WL 1898704, at *1.

14

Third and finally, the Commissioner argues that even if—as we have now concluded—the apparent conflict between Heller's testimony and the *Dictionary* triggered her duty to probe further, the ALJ adequately carried out that duty. After Heller had identified three jobs that, in her view, a person with Lockwood's limitations could perform, the ALJ asked whether this opinion "was consistent with [the *Dictionary*]." R. 41. Heller replied, in relevant part, "It is." *Id.* According to the Commissioner, this exchange operated to resolve any apparent conflict.

We disagree. As the Eleventh Circuit has recently explained, the Commissioner's duty "to identify and resolve apparent conflicts between [the *Dictionary*] and [vocational expert] testimony . . . is not fulfilled simply by taking the [vocational expert] at his word that his testimony comports with the [*Dictionary*] when the record reveals an apparent conflict." *Washington*, 906 F.3d at 1362. Rather, the Ruling places the onus on the Commissioner, acting through her ALJs, to affirmatively "[i]dentify" any conflicts. SSR 00-4p, 2000 WL 1898704, at *1. Allowing the Commissioner to fulfill this obligation through "catch-all question[s]" like the one the ALJ posed during Lockwood's hearing would essentially shunt the Commissioner's "duty to identify, explain and resolve" apparent conflicts onto the testifying expert. *Patti v. Colvin*, No. 13-CV-1123, 2015 WL 114046, at *6 (W.D.N.Y. Jan. 8, 2015). Particularly in light of "[t]he inquisitorial nature of disability hearings"—in which claimants often appear *pro se*—we agree with the Eleventh Circuit that the Ruling must be read to "impose[] an independent, affirmative obligation on the part of the ALJ to

15

undertake a meaningful investigatory effort to uncover apparent conflicts, beyond merely asking the [vocational expert] if there is one." *Washington*, 906 F.3d at 1364.

In the end, the Commissioner failed to reconcile Heller's testimony that a person with an overhead reaching limitation can perform the three jobs at issue here with the *Dictionary*'s indication that all three jobs require "reaching." Heller's testimony cannot, then, represent substantial evidence capable of demonstrating that Lockwood can successfully perform work in the national economy. It may well be that the apparent conflict between Heller's testimony and the *Dictionary* is susceptible to easy resolution—if, for example, the reaching involved in the three jobs at issue consists exclusively of lateral or downward reaching. But it is not our role to speculate as to how or whether that conflict might have been resolved had the Commissioner carried out her responsibility to probe such matters. Instead, we must reverse and remand for further proceedings so that the Commissioner may have the opportunity to conduct the requisite inquiry in the first instance.

In light of this result, the Court has no occasion to reach Lockwood's argument that the Commissioner failed to address Nurse Woods's opinion regarding Lockwood's hand impairments. Neither the ALJ nor the Appeals Council explicitly addressed Nurse Woods's opinion when denying Lockwood's benefits application. *See* R. 4–7, 17–24. The Commissioner maintains that this omission is of no moment: She argues that the record makes clear that the nurse's opinion was in fact considered, if not explicitly remarked upon, and

that any failure to consider the opinion would have been harmless in any event. Lockwood disagrees on both points. Because Lockwood's case must return to the agency either way for the reasons already given, the Commissioner will have the opportunity on remand to obviate this dispute altogether by giving express consideration to Nurse Woods's opinion and by making clear what, if any, weight it merits.

### III. CONCLUSION

To summarize, we hold that the District Court erred in determining that substantial evidence supported the Commissioner's denial of Lockwood's disability insurance benefits application. This is because the Commissioner's denial was based on evidence that contained an apparent conflict with the *Dictionary*'s authoritative guidance, and yet the Commissioner failed to take any steps to explore or resolve that conflict. In light of this holding, we decline to address Lockwood's argument that reversal is independently warranted as a consequence of the Commissioner's failure to expressly consider Nurse Woods's medical opinion.

For the foregoing reasons, we **REVERSE** the District Court's judgment and **REMAND** for further proceedings.