Gibbons v. Commissioner of Social Security

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

**At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of June, two thousand twenty-three.**

PRESENT:

MYRNA PÉREZ,
ALISON J. NATHAN,
SARAH A. L. MERRIAM,
   *Circuit Judges.*

_____

Terry Lee Gibbons,

   *Plaintiff-Appellant*,

  v.             No. 22-2730

Commissioner of Social Security,

   *Defendant-Appellee.*

_____

**FOR PLAINTIFF-APPELLANT:**   Terry Lee Gibbons, pro se, Blasdell, NY.

**FOR DEFENDANT-APPELLEE:**   Jessamyn Hanna, Natasha Oeltjen, Special Assistant United States Attorneys, Ellen E. Sovern, Associate General Counsel, Office of the General Counsel, Social Security Administration, Baltimore, MD, *for* Trini E. Ross, United States Attorney for the Western District of New York, Buffalo, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (John L. Sinatra, Jr., *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** in part and **REVERSED** in part and **REMANDED**.

Plaintiff-Appellant Terry Lee Gibbons, proceeding pro se, appeals the district court's judgment on the pleadings in favor of the Defendant-Appellee the Commissioner of Social Security (the "Commissioner"), in which the district court reviewed the Commissioner's finding that Gibbons was not disabled and, therefore, not entitled to a Social Security disability insurance benefit. Principally, Gibbons challenges the administrative law judge's ("ALJ") analysis at the fifth and final step ("Step Five") of the process for evaluating disability claims. Among the challenges Gibbons raises to the Step Five analysis is a claim that the ALJ procedurally erred in relying on testimony from a vocational expert to conclude that he could perform jobs in the national economy despite his being limited to performing simple, routine tasks. While we agree with many aspects of the ALJ's ruling, we find that, under our case law, the ALJ had a duty to obtain a reasonable explanation for an apparent conflict between the vocational expert's testimony and the reasoning level required of certain jobs in the Dictionary of Occupational Titles (the "Dictionary").[1] We assume the parties' familiarity with the underlying facts, the extensive procedural history, and the issues on appeal, which we reference only as necessary to explain our decision.

---

[1] For the benefit of our pro se appellant, we explain that we use the word "apparent" in this order because it is the term used by the Social Security Administration, *see, e.g.*, SSR 00-4p, 2000 WL 1898704, at \*4 (Dec. 4, 2000), and by this Court in *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 91 (2d Cir. 2019). We acknowledge that the word as it is used in this setting may differ from other settings. *See Apparent*, Oxford English Dictionary (2d ed. 1989) (noting, as potential meanings, both "evident, plain, clear, obvious" and "appearing to the senses or mind, as distinct from (though not necessarily opposed to) what really is").

## I.    Standard of Review

We review de novo a district court's judgment on the pleadings. *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). "When deciding an appeal from a denial of disability benefits, we focus on the administrative ruling rather than the district court's opinion," *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (quoting *Kohler v. Astrue*, 546 F.3d 260, 264–65 (2d Cir. 2008)), and "review the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard," *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) (quoting *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002)). "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks omitted).

## II.    Discussion

"The [Commissioner] has promulgated a five-step process for evaluating disability claims." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing 20 C.F.R. §§ 404.1520, 416.920). At Step Five, the only step on appeal here, "the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform." *McIntyre*, 758 F.3d at 151 (citing 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v)).

### A. Appropriate Time Frame

At the outset, we disagree with Gibbons's claim that the vocational expert considered the wrong time frame when identifying jobs he could have performed. Instead, the record shows the ALJ reminded the vocational expert both in a pre-hearing notice and at the hearing that his testimony needed to cover the relevant time frame. The vocational expert also reviewed

Gibbons's vocational evidence before responding to the post-hearing interrogatory, further suggesting the expert was aware of the correct time frame. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When . . . the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."). These facts sufficiently support the Commissioner's position.

## B. Conflict Between Vocational Expert's Testimony and the Dictionary Regarding Jobs Requiring a Reasoning Level of Three

We do find error, however, in the ALJ's reliance on testimony from the vocational expert that appears to conflict with the Dictionary by concluding that Gibbons could perform jobs in the national economy requiring a reasoning level of three, notwithstanding Gibbons's undisputed limitation to unskilled work.

We recently held that an ALJ is required to "inquire into all those areas where the expert's testimony *seems to* conflict with the *Dictionary*." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 92 (2d Cir. 2019) (internal quotation marks and alterations omitted). That is, an ALJ has an "independent, affirmative obligation . . . to undertake a meaningful investigatory effort to uncover apparent conflicts, beyond merely asking the vocational expert if there is one." *Id.* at 94 (internal quotation marks and alterations omitted).

The parties agree that each job identified by the vocational expert in the post-hearing interrogatories required a reasoning level of three, which necessitates the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and d]eal with problems involving several concrete variables in or from standardized situations." *Appendix C - Components of the Definition Trailer*, Dictionary of Occupational Titles, 1991 WL 688702 (4th ed. 1991). They also agree that some courts of appeals have found

that jobs requiring a reasoning level of three are *per se* inconsistent with unskilled work. *See, e.g.*, *Zirnsak v. Colvin*, 777 F.3d 607, 617–18 (3d Cir. 2014) (describing split of authority "as to whether an inherent conflict exists between a job requiring level 3 reasoning and a finding that a claimant should be limited to simple, routine tasks and unskilled work").

We conclude the ALJ here failed to meet its affirmative obligation to probe into an apparent conflict between the reasoning level required in the Dictionary and the vocational expert's testimony. Under *Lockwood*, ALJs are required to "obtain a reasonable explanation for any apparent—even if non-obvious—conflict between the Dictionary and a vocational expert's testimony." *Lockwood*, 914 F.3d at 92 (internal quotation marks and emphases omitted). That affirmative "duty to elicit an explanation that would justify crediting the testimony," *id.*, was triggered when the vocational expert testified that Gibbons would be able to do jobs requiring him to deal with problems involving several variables even though Gibbons was limited to straightforward, routine tasks and simple decisions.

Nothing in the record suggests that the ALJ probed into this potential conflict.[2] At one point in the October 2019 hearing, Gibbons's representative suggested that "a limitation to simple, routine tasks and simple work related decisions would preclude the ability to carry out detailed written and oral instructions," with which the vocational expert disagreed. Certified

---

[2] Other circuits have recognized the possible conflict between this type of limitation and a reasoning level of three. *See, e.g.*, *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1316–17 (11th Cir. 2021) (finding apparent conflict between limitation to simple tasks and a reasoning level of three); *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) ("Today, we join the Tenth Circuit and hold that there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning."); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (concluding that limitations in the plaintiff's residual functional capacity, which permit only "simple and routine work tasks," seems "inconsistent with the demands of level-three reasoning"). The Commissioner's reliance on our previous summary order is unavailing as that order predates *Lockwood* and, in addition to being non-binding precedent, also did not speak on this exact question. *See Jones-Reid v. Astrue*, 515 F. App'x 32 (2d Cir. 2013) (concluding that substantial evidence supported the vocational analysis and conclusion that the plaintiff was able to perform light work with the restrictions imposed, and finding no merit to claims that the ALJ improperly weighed the relevant medical opinions or made erroneous credibility determinations).

Administrative Record ("CAR") at 1697. But the ALJ did not follow up on the point, even after Gibbons's representative submitted a post-interrogatory brief raising the incongruence between his limitation and the jobs requiring a reasoning level of three.

Nor did the ALJ address the issue with any specificity in his opinion, stating only that "the [specific vocational preparation] codes of the jobs of charge account clerk, call-out operator, and order clerk are consistent with semi-skilled to skilled work, but a careful review of the [Dictionary] shows that these jobs are [specific vocational preparation] 2, consistent with unskilled work and consistent with Vocational Expert Pearson's responses." *Id.* at 1658. That statement, however, did not address the conflict relating to the reasoning levels, instead focusing solely on the specific vocational preparation required for the jobs put forth by the vocational expert.

The Commissioner contends that any error was harmless because Gibbons's work history included a job with the same reasoning level of three, the ALJ found that Gibbons's learning disability was not a medically determinable impairment, and Gibbons's representative failed to either raise the issue at the hearing or seek a supplemental hearing. But the ALJ did not cite to that work history or his findings about Gibbons's potential learning disability in his consideration of Step Five. Moreover, *Lockwood* makes clear that the burden is on the ALJ, not the claimant, to inquire into apparent conflicts between the Dictionary and the vocational expert's testimony. *See* 914 F.3d at 92–94.

We cannot say for certain that this error is harmless. We therefore remand to the agency to allow the ALJ to resolve any conflict regarding the reasoning level between the available jobs testified to by the vocational expert and the jobs Gibbons would be able to perform given his residual functional capacity ("RFC").

**C. Sit/Stand Option, Use of a Cane, and Tinted Glasses**

The ALJ did not err, however, by failing to resolve the alleged conflict between the Dictionary and Gibbons's RFC, which includes the need for a sit/stand option, use of a cane, or tinted glasses. The ALJ did not err because these limitations do not conflict with the Dictionary, which the parties agree does not include these limitations. Furthermore, the ALJ ensured that the vocational expert's testimony took account of the limitations by first asking hypotheticals without the limitations and then asking hypotheticals with the limitations in place. Because the ALJ asked the vocational expert about these limitations and because there is no conflict between the Dictionary and Gibbons's RFC, we do not find the same *Lockwood* issue here as we do regarding the conflict between the reasoning level in the Dictionary and the vocational expert's testimony.

**D. Reasonable Accommodation**

Gibbons's only support for the argument that tinted glasses are a reasonable accommodation is a negative inference drawn from the United States Equal Employment Opportunity Commission's website, stating that the use of ordinary lenses is not a reasonable accommodation, from which he asks us to surmise that tinted lenses must therefore be a reasonable accommodation. We find this argument to be without merit and also do not find any evidence in the record suggesting that the vocational expert assumed an employer would allow a claimant to be granted a reasonable accommodation.

\* \* \*

We agree with Gibbons that a time-limited remand is appropriate to explore any conflict between the vocational expert's testimony and the jobs Gibbons would be able to perform given

his RFC.[3]  "[W]e are mindful of the 'often painfully slow process by which disability determinations are made, and that 'a remand for further evidentiary proceedings (and the possibility of further appeal) could result in substantial, additional delay.'"  *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004) (citation omitted) (first quoting *Carroll v. Sec'y of Health & Hum. Servs.*, 705 F.2d 638, 644 (2d Cir. 1983); then quoting *Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000)).  As it has now been 13 years since Gibbons filed his most recent claim (and over 20 years since his date last insured), we direct the district court to set a 120-day time limit on any further ALJ proceedings and, if the ALJ denies benefits and Gibbons appeals, the Commissioner's final decision shall be rendered within 60 days of Gibbons's appeal.  *See Butts v. Barnhart*, 416 F.3d 101, 103–06 (2d Cir. 2005) (imposing 120-day limit for proceedings before the ALJ and a 60-day limit for administrative appeal).

We have considered Gibbons's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[3] Gibbons asks that we remand solely for the calculation of benefits and not for further proceedings.  But this Court has held that a remand solely for a calculation of benefits is appropriate "where this Court has had no apparent basis to conclude that a more complete record might support the Commissioner's decision."  *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999).  Because, for the reasons discussed above, the ALJ must resolve the apparent conflict between the reasoning level required in the Dictionary and the vocational expert's testimony to support the decision, we reject Gibbons's request to remand solely for a calculation of benefits.